The next case on the morning's docket is Yarber v. Mueller, parties ready for stage? Mr. Starling, you're up first. Please support, counsel. Unfortunately, I suppose this case is not quite as glorious as the one that preceded it, but nevertheless vitally important to the parties. The issues are set out as simply as possible. And I think as I read over the reply brief filed by the FLD, I realized that it could even be further simplified, and I did so. In our reply brief, I listed off six different points. The facts are simple. I won't go through them all, except to note that August Mueller set up two trusts, one with the Magna Trust and then presumably a land trust. He transferred a certain asset into the Magna Trust. He didn't transfer anything from the Magna Trust to the land trust. The land trust listed that it was holding Exhibit A, and there was nothing described in Exhibit A. The lawsuit started by a widow who had been excluded from her late husband's estate plan. There were four daughters, none of which were the plaintiffs, three of whom sided with the plaintiff and one of whom did not. In fact, the three sisters, daughters, one of whom was the mother of the plaintiffs in this case, signed an affidavit admitting that all of the allegations concerning unflue influence and incompetence were true. In that particular case, Mr. Ysursa represented Cindy, who was the other daughter, not the three, but the other daughter. The case before this court is one that is a standard review, is de novo, and it is then the responsibility of this court to review those trust documents and to determine whether or not it was necessary to serve the minor yarbors who have already been let and appointed for it. The lawsuit was filed. Magnet Trust was named as a party defendant. The beneficiaries of Magnet Trust, Cheryl Yarbor and Cindy Penn, were named as party defendants, and they were named as beneficiaries and they were named as trustees of the second trust, what I call the second trust. The second beneficiaries, minor yarbors, were not. They were contingent beneficiaries, and as a result, their interest had not been vested and they were not required to be sued. Both sides have submitted cases and arguments to the court, but it really boils down to this court needing to review the trust to determine whether or not the interest were contingent or vested. But I think it's very telling to note, at page 13 of the brief of the appellee, that they talk about that the 21st anniversaries of the births of the plaintiffs were certain to occur. The language in the trust says that upon them attaining the age of 21, certain events would occur. The trustees of the land trust, even had there been a transfer of the property from the Magnet Trust to the land trust, had absolute and complete discretion to decide what, if anything, to do with that income of that trust from its inception until the 21st birthday. We've cited cases that stand for the proposition that that makes it contingent and not vested at that point. They weren't, there's nothing automatic that says that they are going to live to be 21. We've cited cases for that proposition. But somehow, the appellant suggests, again at page 13 of their brief, quote, the 21st anniversaries of their births were certain to occur. And when I reread the trust, I decided, well, what does the word attain mean? And so I looked it up, and because I think in terms of somebody attaining a goal, well, if you attain a goal, that means you reach the goal. In fact, I think I heard that word during the Olympics, that he attained his goal of blah, blah, blah. So I looked it up in Black's Law Dictionary, and it said to reach or come to by progression or motion, to arrive at, as to, quote, attain a ripe old age, end of quote. Now, if the appellee's suggestion is correct, then I will attain a ripe old age at some point in time. I will be, we will have the 100th anniversary of my birth, and we'll have the 150th anniversary of my birth. But I may not attain that birth, except today. Now, that is not, as I indicated, I think that's disingenuous. They were not guaranteed to live to their 21st birthday. As such, they were not vested beneficiaries, and did not need to be named. Now, there are no cases that I have been able to find, no cases that they've found, that examine whether when you have a trust after a trust, who you have to name. And I thought about it again in retrospect, and I thought, well, what would I do if I was going to do this all over again? And I think I'd do exactly what I did. I would look up, and I would see, okay, who do you have to serve? I know from my experience in independent domain law that you don't have to serve the beneficiary of the trust. I looked up some cases, and I found that in a mortgage foreclosure, you don't have to name the beneficiary of the trust. But in this situation, we did. We named the trustee magnet trust. We named the beneficiaries of the first trust, Cindy and Cheryl. And so we named them as beneficiaries of the first trust, and as trustees of the second trust, even if there was a transfer. But there wasn't a transfer. There was a transfer to magnet trust, and there was a transfer from magnet trust to Cindy and Cheryl as trustees. So what do we have? We have sued and served all the necessary parties. Everybody consented to the settlement, including the trustee, Mr. Ussert's then client, Cindy. She agreed that the various trusts would be set aside, including the one for which she was a trustee. She was the one, if she had any responsibility at all, who was to protect the interests of the Arbor boys of their contingent interests. So I posed these questions in our library. Is it sufficient for magnet trust to have been made a party in the underlying case by service on magnet trustee? Yes. If service upon magnet was not sufficient to best the court with jurisdiction, was any defect cured by service upon the beneficiaries of magnet trust? They were. If that wasn't sufficient, was any defect cured by the service of the trustees of August E. Miller Irrevocable Trust No. 3? If there was an error, it was the beneficiaries and the trustees were named. Was it necessary to serve the beneficiaries of the August Miller Irrevocable Trust No. 3 if service was had upon the trustees of the trust, the beneficiaries of the original trust, and the trustee of the original trust? We suggest we've named everybody that we need to name. No. 4, what effect, if any, did the failure to transfer any property from magnet trust to August E. Miller Irrevocable Trust No. 3 have? We've cited cases for the proposition that you have to have a transfer of property into a trust. When it says, when August Miller in his declaration of trust says, I hereby hold the following described property of Schedule A, and he doesn't complete Schedule A, then what is it that he's holding? He's not holding anything, because it wasn't complete. So, they indicated, they said, well, you know what, magnet never signed off on the trust. Well, I don't recall that. That's one of the problems with something being so old as this. But I do know this. We wouldn't have a lawsuit if magnet trust hadn't transferred the property back to Toots Miller, or if the court hadn't deemed that to be void, because the title would still be in magnet trust. It wouldn't be in the August Miller trust, it would be in magnet trust. And that was all deemed to be void. And so, ultimately, we end up with Toots, or her nickname is Toots, does Neville Miller a revocable trust, wherein she received the income of this particular asset for her lifetime, and upon her death, it passes to the three sisters, Cheryl Yarber, the mother of the Williams, Gail Reser, one of the sisters, and Kathy Lindau, the other sister. So we know that this resolution was binding on everybody. And, of course, if this part of the puzzle is deemed to be, should be set aside, then what happens to everything else? This case was resolved to everyone's satisfaction in 1994. So we're looking back 16 years ago. I'd suggest to the court that the parties have submitted the cases. I read the cases a certain way, they read the cases a certain way. This court, de novo, will read the trust, determine whether or not it's vested or whether it's contingent. But in any event, I think that everything we did was proper. I think that justice requires that the trial court be reversed and that the cause be dismissed. Thank you. Your Honor, Mr. Sterling, Mr. Blood. My name is Bernie Sorso. I'm here representing the Yarber boys. My good friend, Harry Sterling, has asked this court, in this case, to do some justice. Well, I submit to you that the answer is not justice if the Yarber boys, who were the beneficiaries of their grandfather's trust, were to receive the Britten House farm, had that farm taken away from them by a settlement agreement to which they were not a party, nor would they represent it. That's a fundamental problem with this. These Yarber boys had no representation, no say-so, in the settlement that was entered into, not by Sidney Pan or Manga Bang, but by three stepdaughters of Selda Miller, three of Audie Miller's daughters. That settlement was entered into after Sidney Pan was no longer involved in the lawsuit. We'll get that particular thing. I think we've got some dates wrong here. The point is that I represented Sidney Pan, who was the executor of the estate. The estate sued, the bill of contest. There was also a trustee under this trust for the Yarber boys, along with the Yarber boys' mother, and that there was a second suit filed concerning that. Alleging that Audie Miller's plan was all void because he was, in fact, under undue influence at the time he entered into this estate. That's, of course, not the issue here. Whether he was or he wasn't, I'm in the position that he was, but he wasn't under undue influence. Is that still open? No. Why not? Time? It was long since settled after we left. Sidney Pan entered into an agreement where she settled the matter and withdrew and resigned as the co-trustee. After that, it was left to the remaining sisters and the ex-wife, the stepmother, to resolve the rest of the estate. It's the part of this resolution that involved the rest of the estate, particularly the trust, which was funded by the Rittenhouse Farm, which was to be for the Yarber boys. Just to make sure I understand, was the execution of the trust agreement part of the documents that it was claimed occurred under undue influence? Correct. Okay. They were all under due influence at the same time. If you'll notice the dates of all these documents, the plan was Oggy Miller had four daughters, and he had a wife. I think it was his second or third. And he wanted to convey his property. He was terminally cancer. He went and had an estate planned. As you can see in the record, it was attorney Danny Jackman's. So as part of the estate plan, he wanted to see that certain farms that he owned go to certain grandchildren of his. With respect to this case, he designated that the Rittenhouse Farm would go to the Yarber boys. You see, that's how the trust agreement reads, that we're concerned with here. It says specifically that I, August Miller, of the County of St. Clair, State of Illinois, transferred to Cynthia Penn and Shirley Yarber, both of the County of St. Clair, State of Illinois, as trustee, the property described in Schedule A to be held in trust as follows. That property is described in Section 3 of the trust agreement as being, the principal asset of this trust is the beneficial interest of the Illinois Land Trust, which holds legal title to the farm known as the Rittenhouse Farm. So the way they set this up, for whatever reason, I'll defer to the estate planners, but on the same day, Augie transfers title to the Rittenhouse Farm, which he owns, legal title to Magna Bank in a land trust, which I guess is a form of trust, but it's not quite the same as the trust we talk about in other instances. He gives it to a land trust so that Magna Bank's legal title, equitable title, is in the other trust, which he creates the same day, which is trust number 3, irrevocable trust number 3, which makes Cindy Penn, Shirley Yarber, trustees, and the Yarber boys, the beneficiaries of that trust. So we have a trust on a trust on a trust. But the ultimate thing comes out to be that on this day, February 13, 1992, when he signed those documents of the deed to Magna, he created a beneficial interest, an equitable title, in the Yarber boys. Certainly created an interest that the Yarber boys had that needed to be at least protected to the extent that if you were going to void it, you ought to at least let them have some representation. They were miners at the time. Have some representation to be involved in this settlement which declared these trusts all to be void, this whole plan for it. That's what we're saying. I started out. We needed to have some sort of representation at the time that these settlements which voided their interest, their beneficial interest in the trust, wasn't a remainder. It's the equitable title. Certainly a vested interest, whether it be fee, income, whatever. It was certainly a sufficient interest that these boys needed to be constitutionally protected and given their day in court. That was not done. The solution to this situation would have been very simple. You merely appoint a guardian ad litem which is done every day. And the guardian ad litem would not be Cheryl Yarber who had an interest opposed to them. It would have been a lawyer. And it would have involved a farm which was worth hundreds of thousands of dollars. The guardian ad litem fee would have been more than that 150 or something like that. It would have been substantial. That lawyer then would have been charged by the court to protect the interests of the Yarber boys. Had that lawyer been appointed, he could have addressed the situation and I think would look at it and say, well, what's this settlement that voids this thing? Well, we think the transaction of the Yarber boys was void anyway because it was under undue influence. So they really don't have any interest in this. And by the way, that Rittenhouse farm, that's going to go to a life estate for the stepmom, the wife, with the, upon her death, it being, along with the other properties, going to Cheryl Yarber as, and her sisters. Not Cindy Penn, but other sisters. So you see, the trustee, Cheryl, who is the mom, has an interest. She gets, if the settlement goes through, she gets an interest in the farm, her children get none. Is there any significance to that? That's quite true. Let me finish that. Because under the settlement deal, under the original trust, if the Yarber boys don't survive, don't have any issue, the fee title ends up going to Cheryl Yarber. I was just going to ask you, is there any significance in the fact that the trust provided a purse derbies distribution for the grandchildren? I think there's some significance to that. And what would that be, in your opinion? Well, the fact that there is a, it shows that they have some sort of vested interest in it that indicates that if they just die, the fee title goes to their descendants. Now, Harry points out... In your opinion, does that make it a vested interest as opposed to contention interest? Not in itself, no. Okay. Frankly, all these cases we have when we talk about remainder, I don't even think we have a remainder here. This is a trust. Cindy, as co-trustees, for the benefit of Luke and Jacob Yarber, the Yarber, the trustee says, for the benefit of my grandchildren, Jacob Yarber and Lucas Yarber, that's who this trust is created for. They're, and that should create at least some sort of vested interest that would require that these parties be, that they be represented in any case that's going to take away their beneficial interest, which I submit as an actual title to the whole property of the farm. But I don't think you need that much. All you need is enough of an interest that your conscience would say, well, I think these people need some representation. They need to be brought into this case. They are, quote, necessary parties because you're taking away their whole thing, their beneficial interest and this trust. It isn't some sort of thing that's going to happen if, you know, I've got it, I'm going to hold it, I don't sell it, I don't do this and you get it from my dad. No, they get it immediately. If the interest they have would be a contingent interest, let's just argue that for a moment. I know you don't agree with this. Would they still be necessary parties in your opinion? Once again, it depends on how you define contingency. If we call all these people remainder men, there is case law that says, well, it's either if it's a vested remainder, you're a necessary party, contingent remainder, you're not. That's nice. This thing doesn't seem to, in this case, doesn't seem to fit into those pairs because it's not necessarily a remainder anyway. And even if it were, it's not necessarily the remainder of this being. Remember, the day that this thing is entered, these children have an interest in the income immediately. And that's why they argue about it, well, yeah, it's discretionary. The trustee has some discretion. Their directive, though, is to use it for the kid's health, education, and welfare until they're 21. Commonly done in the past because the kid's 18, he's going to get everything, he's an adult. Well, you want to have discretion but you don't want him to blow the money on something so you give discretion to the trustee. Now, of course, the trustee can abuse discretion and there's a lot of it but the point is that the mere fact that there's discretion in the trustee doesn't diminish the fact that the Yarder boys have an interest, immediate interest in this and the rest of these things fall their front. That means they're necessary partners. When you think about it, it makes sense because what happened is these Yarder boys, two young boys, ended up, grandpa gave them a farm, they come out because it's Martin and his mother and sisters and everyone else, they decided to have a settlement which cuts them out. Now, we're not even asking if that's reasonable. What we're saying is that it's really unreasonable, it's really unfair, it's really unjust to say that they don't even get a chance to argue that they have no representation. Forget them. They don't count. That thing doesn't count. If they agree to that type of thing, even if something's wrong, you can do a lot of different things. The point is that they never had a chance to be represented. We've taken the position that that means that as to the Rittenhouse farm, this settlement, not the settlement, but the settlement, the settlement that you made between the aunts and the mother and the stepmom, whatever, go ahead and deal with what you want to deal with, but you can't deal with my property and my interest without my having my day in court. So it goes back to where it was before the settlement was made. Now, unfortunately, during the course of this, factually, the property was sold. So what happened was that the court finally said, well, but the proceeds of the sale have to be accounted for and everything. And that's been done. That's not a problem. So we know that there's a fund there that the court has decided would be the, not the ground itself obviously is sold, but the proceeds from that sale and its income and loss therefrom has been accounted for and that's how you arrive at a certain number. We're not really contesting the number at this stage. It's just a question of whether the boys had any standing at all, whether that settlement with respect to their interests made without their being represented is enforceable as against them. And if we claim that it is void, the rest of the settlement will go through. I have no dogged advice. And I think it should be that the board should be involved in preserving the interest of these two boys in this particular trust. And that's all the court said and therefore ran a judgment for the value of what was in there to these boys to be used by them as they processed this. And I have one that's over 30. I think we still have one that hasn't quite 30 yet. But obviously those things may or may not occur and it will happen the way it's supposed to happen. But that's our position this year, Your Honor. And we've had, it becomes somewhat complicated, I realize, because of the trust upon the trust upon the trust and we get confused about what we're talking about. But there was something they raised about a land trust and whether a land trust, you don't have to serve a beneficiary in a land trust case like that. Those cases are where a set law sets up a land trust. And I think the Court's also familiar that land trusts are set up many times just so that the beneficiaries, the real owners, aren't known. It's a privacy thing. There's other reasons maybe, but that's one of the big ones I remember. And that is if Obbie were the beneficiary of the trust and you served the set magnet, as against him, well of course he's got coverage there. He can't probably file on that deal. But that's not what happened here. We've got the beneficiaries are not the settlers. They're the beneficiaries. So that case, which was a little  more complicated than this one, a few other remarks made. I could comment on those. I think basically it still comes down to just a general sense of justice, fair play. It just doesn't seem right that these two boys lose the interest that their families have in having their day in court. Thank you. Thank you, counsel. One thing that's overlooked is the fact that everybody, with the exception of Bernie's client in the prior case, said that Mr. Miller was incompetent and that he was under the undue influence of Ms. Penn. So at least with respect to the fact that he  under the influence of Ms. Penn, I don't think that he was incompetent. I think that he was under he was under    Penn.  don't believe that he was under the influence of Ms. Penn. The question is whether they were contingent or vested beneficiary. They weren't vested because they had no right to the income and they had to live to be 21. The cases clearly say you have to have those things before you are a vested beneficiary. In the absence of being a vested beneficiary, they did not have to be served. The original trust was served, the original beneficiaries were served, the second trustees were served. The only thing that wasn't done was a guardian was appointed for contingent beneficiaries. Again, this is a matter of de novo. The court will read the documents as well as we can. We suggest that this court ought to reverse the trial judge and if we can, we will. From a practical standpoint, if you say, okay, fine, we're going to have this and Sherrilee Arbor's interest is different than her kids, her kids still have to deal with the fact that mom said that grandpa was incompetent when he set up this trust. You can't get around that. Thank you. We look forward to your decision. Thank you, gentlemen. I appreciate your arguments today and your briefs. We'll get back to you soon.